UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 13 |
| Brittany Ebson, | : | |
| Debtor. | : | Bankruptcy No. 19-16576-MDC |

# **MEMORANDUM**

## I.    INTRODUCTION

Pending before the Court for disposition is the application of Devon Moore ("Mr. Moore") for allowance of an administrative expense claim in the amount of $21,600.00 (the "Administrative Expense Claim").[1]  The Administrative Expense Claim is based on post-petition rent obligations Mr. Moore asserts Brittany Ebson (the "Debtor," and together with Mr. Moore, the "Parties") incurred under a lease for property Mr. Moore owns, located at 2745 Germantown Avenue, Philadelphia, Pennsylvania (the "Leased Property").  The Debtor objects (the "Objection")[2] to the Administrative Expense Claim on the basis that it is not supported by §503(b) of the United States Bankruptcy Code, 11 U.S.C. §§101, *et seq.* (the "Bankruptcy Code").  For the reasons set forth herein, the Court will grant the Administrative Expense Claim in part and deny in part.

## II.    RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

The Debtor filed her chapter 13 bankruptcy petition on October 21, 2019 (the "Petition Date").  Prior to the Petition Date, the Debtor had operated a daycare facility at the Leased

---

[1] Bankr. Docket No. 240.

[2] Bankr. Docket No. 243.

Property. After filing her petition, the Debtor initiated litigation against Mr. Moore in two ways with respect to the Leased Property.

On October 22, 2019, the day after filing her bankruptcy petition, the Debtor initiated an adversary proceeding against Mr. Moore by filing a Complaint for alleged violation of the automatic stay imposed by §362(a) of the Bankruptcy Code.[3] The Debtor alleged that, although Mr. Moore had obtained a pre-petition judgment for possession of the Leased Property on September 23, 2019, such judgment expressly provided that possession could not be obtained for 30 days, yet Mr. Moore locked the Debtor out of the Leased Premises on the Petition Date with actual notice of the Debtor's bankruptcy and only 28 days after the judgment for possession was entered. The Debtor further alleged that Mr. Moore had not restored the Debtor's access to the Leased Property post-petition, and that such actions constituted a willful violation the automatic stay.[4]

On November 8, 2019, the Debtor also filed an expedited motion seeking imposition of the automatic stay against Mr. Moore and for damages (the "Stay Imposition Motion").[5] The Debtor sought an order compelling Mr. Moore to allow her reentry to the Leased Property. The Court held an expedited hearing on the Stay Imposition Motion on November 13, 2019 (the "Stay Hearing"), at which the Debtor and Mr. Moore arrived at a settlement, pursuant to which

---

[3] Adv. Pro. No. 19-00206, at Docket No. 1.

[4] The subsequent procedural history of the adversary proceeding is tortured but unnecessary to rehash here, other than to note that during the two years the adversary proceeding was pending, very little of substance was pursued or accomplished beyond the filing of an amended complaint, a denied motion for default judgment, an answer, and a motion to compel discovery, for which there was never a response filed or hearing held before the Parties agreed to dismiss the action with prejudice on October 29, 2021. Adv. Pro. Docket No. 49.

[5] Bankr. Docket No. 13.

the Debtor was to retake possession of the Leased Property and was obligated to pay monthly rent in accordance with the terms of the lease. A settlement stipulation was to be filed by December 13, 2019. No such stipulation was filed, however, and instead the Debtor ultimately withdrew the Stay Imposition Motion.[6]

On January 5, 2020, Mr. Moore moved for relief from the automatic stay to proceed with eviction of the Debtor from the Leased Property, asserting that the Debtor had not retaken possession of the Leased Property since the Petition Date, had not paid rent as agreed to and required following the Stay Hearing, and had not even executed the settlement stipulation (the "First Stay Relief Motion").[7] On January 20, 2020, the Debtor filed an objection to the First Stay Relief Motion (the "First Stay Relief Objection"),[8] asserting that, notwithstanding her access to the Leased Property following the Stay Hearing, she was unable to resume her daycare business there due to (i) the disruption to operations and client relations caused by the lockout, and (ii) the destruction and/or removal of items used in the daycare business that were located in the Leased Property during the time she did not have access. The Debtor therefore asserted that without an ability to resume her daycare operations, she did not have the ability to make the required lease payments to Mr. Moore, but that this was the result of Mr. Moore's own actions and therefore he should not be granted stay relief to proceed with eviction. On February 6, 2020, the Court held a hearing on the First Stay Relief Motion, after which time it took the matter under advisement.

---

[6] Bankr. Docket No. 45.

[7] Bankr. Docket No. 38.

[8] Bankr. Docket No. 46.

With the Court having not ruled on the First Stay Relief Motion,[9] Mr. Moore filed a second motion for relief from stay on October 20, 2020 (the "Second Stay Relief Motion").[10] The Second Stay Relief Motion echoed its predecessor, seeking relief from stay to proceed with the Debtor's eviction based on her failure to retake possession of the Leased Property, operate her daycare business, or make any lease payment since July 2019.  On November 16, 2020, the Debtor filed an objection to the Second Stay Relief Motion (the "Second Stay Relief Objection"),[11] which likewise echoed its predecessor's assertions that she was unable to resume her daycare business at the Leased Property due to Mr. Moore's actions, resulting in her inability to make the required lease payments, and therefore he should not be granted stay relief to proceed with eviction.  On December 4, 2020, the Court held an evidentiary hearing on the Second Stay Relief Motion, after which it took the matter under advisement.  On March 10, 2021, the Court entered an Order (the "Stay Relief Order")[12] granting the Second Stay Relief Motion pursuant to §362(d)(1) of the Bankruptcy Code and permitting Mr. Moore to proceed with eviction proceedings against the Debtor, based on the Court's finding that she had not remained current on her post-petition rent obligations for the Leased Property and failed to establish that she would be able to become current.

---

[9] A partially-executed stipulation of settlement was filed on the docket on February 6, 2020, providing for the Debtor's return to the Leased Premises and post-petition payment of rent and maintenance of insurance.  Bankr. Docket No. 51.  Although that stipulation was subsequently striken with the direction that a fully-executed stipulation be re-filed, Bankr. Docket No. 52, it appears that the Court mistakenly understood the matter to be settled.

[10] Bankr. Docket No. 107.

[11] Bankr. Docket No. 120.

[12] Bankr. Docket No. 128.

On December 1, 2021, the Debtor filed a motion for sanctions (the "Sanctions Motion")[13] against Mr. Moore and his counsel for their alleged violation of the Stay Relief Order and the Bankruptcy Code's automatic stay by the filing of a civil complaint against the Debtor on November 15, 2021. in the Court of Common Pleas of Philadelphia, seeking the recovery of unpaid rent (the "State Court Action").  The Debtor argued that the Stay Relief Order authorized Mr. Moore to proceed with eviction proceedings against the Debtor but did not authorize any action to recover unpaid rent outside of the Debtor's bankruptcy case.  On December 21, 2021, Mr. Moore filed an objection to the Sanctions Motion, arguing that neither the Stay Relief Order nor the Bankruptcy Code's automatic stay applied to prevent him from seeking post-petition rent through the state court civil action.[14]  Mr. Moore also filed, on December 20, 2021, a motion for relief from the automatic stay to proceed with the State Court Action (the "Third Stay Relief Motion"),[15] asserting both that the automatic stay was inapplicable to his claim for post-petition rent and (assumedly in the alternative) that cause existed to grant relief from the stay pursuant to §362(d)(1) of the Bankruptcy Code.  The Debtor filed a response to the Third Stay Relief Motion on January 4, 2022, again asserting that the already-filed State Court Action violated the automatic stay, and also arguing that cause did not exist to grant relief allowing Mr. Moore to proceed with the State Court Action because the Debtor did not possess the Leased Property post-petition, and therefore did not owe Mr. Moore post-petition rent.

---

[13] Bankr. Docket No. 186.

[14] Bankr. Docket No. 207.  Attached to the Sanctions Motion at Exhibit B was the civil complaint Mr. Moore filed in the State Court Action, which is substantively identical to the Administrative Expense Claim presently before this Court and sought the same amount, $21,600.00, for unpaid post-petition rent from November 13, 2019 to May 31, 2021.

[15] Bankr. Docket No. 203.

The Court held an evidentiary hearing on the Sanctions Motion and the Third Stay Relief Motion on January 18, 2022, and on January 21, 2022. entered an order denying both motions. In doing so, the Court concluded that, notwithstanding its determination that the State Court Action did not violate the Stay Relief Order or the automatic stay because it sought recovery of only post-petition rent, the relief sought in that action was more appropriately determined by this Court because it "implicat[ed] issues unique to the Bankruptcy Code such as whether and to what extent Mr. Moore holds an administrative claim under §503(b), what effect, if any, §365 has on the Rent Claim, and how any Rent Claim will impact the Debtor's prospects for a confirmable plan under §1325." The Court therefore denied both motions and determined that it would exercise jurisdiction over Mr. Moore's claim for post-petition rent.

Mr. Moore then filed the Administrative Expense Claim on March 4, 2022, which, as noted *supra,* seeks allowance of an administrative expense claim in the amount of $21,600.00 for alleged rent due for the Leased Property during the post-petition period of November 13, 2019, when Mr. Moore restored the Debtor's access to the Leased Property, through May 31, 2021, when Mr. Moore recovered possession of the Leased Property. The Debtor filed her Objection to the Administrative Expense Claim on March 21, 2022, denying that she ever regained post-petition possession of the Leased Property, and arguing that because allowance of an administrative expense under §503(b)(1) of the Bankruptcy Code is dependent on the bankruptcy estate's actual post-petition use of property, and because that allegedly did not occur with respect to the Leased Property, there is no basis for Mr. Moore's Administrative Expense Claim. The Court held an evidentiary hearing (the "Hearing") on July 29, 2022, at which both the Debtor and Mr. Moore testified and certain documents were admitted into evidence. The Court then took the

matter under advisement.

### III. DISCUSSION

The evidence at the Hearing and the procedural history of the Debtor's bankruptcy case established the following facts with respect to the Leased Property and its use after the Petition Date. The Debtor is the counterparty to the lease for the Leased Property, which provides for monthly rent of $1,100, due on the first day of the month. The lease was to end by its own terms on May 31, 2021. After the Stay Hearing on November 13, 2019, the key to the Leased Property was returned to the Debtor, and she was to pay post-petition rent per the lease's terms going forward. The Debtor returned to the Leased Property on occasion but did not resume her daycare business there at any point prior to Mr. Moore regaining possession.[16] The Debtor likewise did not make any lease payments to Mr. Moore after the Petition Date. The Debtor did not take any post-petition action to reject the lease for the Leased Property pursuant to §365 of the Bankruptcy Code. The Debtor did, however, object to Mr. Moore regaining possession of the Leased Property pursuant to both the First Stay Relief Motion and the Second Stay Relief Motion. After the Petition Date, including after the Second Stay Relief Motion was granted, equipment and other possessions the Debtor used in her daycare business remained at the Leased

---

[16] There was certain testimony at the Hearing regarding the condition of the Leased Property, whether the Leased Property was subject to inspections violations that prevented the Debtor from operating her daycare business there, and whether there were items of personal property related to the daycare business that were either missing or destroyed. The Court finds that the testimony and documents were conflicting and at times vague, and ultimately unhelpful in the Court's determination regarding whether and to what extent Mr. Moore is entitled to an administrative claim. The Court does note, however, that on February 6, 2020, Emerito Alvarado, an inspector with Philadelphia's Licenses and Inspections office, testified in connection with the First Stay Relief Motion that, as of late January or early February 2020, the Leased Property passed that office's inspection. See Bankr. Docket No. 127. At the Hearing the Debtor testified that there is a separate inspection required for her to obtain or regain her state-issued license to operate a daycare at the Leased Property, but she did not provide any specific information as to how that inspection is different, and as importantly, what steps she had taken post-petition, if any, to have such an inspection performed and her license renewed.

Property.

This, Mr. Moore argues, is a case of the Debtor wanting to have her cake and eat it too, as the saying goes.  Mr. Moore argues that the Debtor was given possession of the Leased Property as of November 13, 2019, did not pay rent at any point after that date, did not point to any affirmative steps she took to resume her daycare business, yet twice objected to Mr. Moore regaining possession.  Mr. Moore argues that his Administrative Expense Claim is supported by the Debtor's access to the Leased Property, whether she actually occupied it or not.  The Debtor, on the other hand, argues that an administrative claim under §503(b)(1) of the Bankruptcy Code requires concrete, discernible benefit from actual use, and because the facts establish that the Debtor did not actually use the Leased Premises for her daycare business after the Petition Date, the Administrative Expense Claim must be denied.

Although the Debtor focused her opposition entirely on §503(b) of the Bankruptcy Code, and Mr. Moore did not cite the statutory authority on which he relies for his claim, the Court begins its analysis by looking to §365, governing the treatment of executory contracts and unexpired leases, because the lease for the Leased Property was an unexpired lease of nonresidential real property.

Section 365(d)(3)(A) provides, in relevant part, that "The trustee shall timely perform all the obligations of the debtor … arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, *notwithstanding section 503(b)(1) of this title*."  11 U.S.C. §365(d)(3)(A) (emphasis added).  In view of the critical "notwithstanding" language, the Third Circuit has concluded that §365(d)(3) is an exception to the general procedures of §503(b)(1) that normally apply to administrative expense

claims, *i.e.,* that they are actual, necessary expenses of preserving the estate. *In re Goody's Family Clothing Inc.*, 610 F.3d 812, 817 (3d Cir. 2010) ("Section 365(d)(3) operates to dispense with [§503(b)'s] requirements for post-petition obligations under an unexpired lease of nonresidential real property, meaning it functions 'without prevention or obstruction from or by' §503(b)(1)." (citing *Centerpoint Props. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 268 F.3d 205 (3d Cir. 2001)). Therefore, until the lease for the Leased Property was assumed or rejected, the post-petition rent is an administrative expense under §365(d)(3), regardless of whether the Debtor actually used the Leased Property, or it otherwise benefited the preservation of the Debtor's estate.

The question then becomes when, if ever, was the lease rejected prior to termination by its own terms on May 31, 2021. Section 365(d)(4) of the Bankruptcy Code provides that, subject to a court-approved extension that was neither sought nor granted in this case, "an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of – (i) the date that is 120 days after the date of the order for relief; or (ii) the date of the entry of an order confirming a plan." 11 U.S.C. §365(d)(4). Here, the Debtor did not at any point take action to affirmatively assume or reject the lease. Although the Debtor, by objecting to Mr. Moore's stay relief requests, at least tacitly indicated a desire to remain in possession of the Leased Premises, there is no implied assumption under §365 of the Bankruptcy Code. *See University Med. Center v. Sullivan (In re University Med. Center)*, 973 F.2d 1065, 1077 (3d Cir. 1992) (assumption must be approved, it cannot be presumed); *In re Dura Auto. Sys., LLC*, 628 B.R. 750 (Bankr. D. Del.

2021) (same, citing *University Medical*). Therefore, having taken no action to assume or reject the lease for the Leased Property prior to §365(d)(4)'s deadline, it was deemed rejected 120 days after the Petition Date.[17] The Petition Date was October 21, 2019, and the lease was thus deemed rejected on February 18, 2020.[18]

As noted *supra*, rent was due under the lease on the first of the month. As such, in the time between the date the Debtor's access to the Leased Property was restored on November 13, 2019, and the date the lease was rejected by operation of law on February 18, 2020, rent came due for the months of December 2019, January 2020, and February 2020. Pursuant to §365(d)(3), Mr. Moore is entitled to an administrative expense for those three months, in the total amount of $3,300.00, without regard to whether the Debtor actually used the Leased Property or whether it benefitted the preservation of the Debtor's estate during that time.

That leaves the "stub rent" period of November 13-30, 2019, and all months from March 2020 until May 2021.[19] For each of those months, Mr. Moore may seek an administrative expense under §503(b)(1). *See Goody's*, 610 F.3d at 817 (the inapplicability of §365(d)(3) does not foreclose a landlord's ability to use the more burdensome §503(b)(1)). However, "for a commercial lessor's claim to get administrative expense treatment under §503(b)(1), the debtor's occupancy of the leased premises must confer an actual and necessary benefit to the debtor in the

---

[17] No plan has yet been confirmed in this case, making 120 days after the Petition Date the applicable deadline under §365(d)(4).

[18] The Court notes that at no point did Mr. Moore seek to repossess the Leased Property based on the argument that the lease had been rejected as a matter of law.

[19] In *Montgomery Ward*, the Third Circuit held that "an obligation arises under a lease for purposes of §365(d)(3) when the legally enforceable duty to perform arises under the lease. *Id.*, 268 F.3d at 211. Section 365(d)(3) therefore does not apply to November 2019 rent for the Leased Property because the legally enforceable duty to pay rent arose on November 1.

operation of its business." *Id.* at 818 (citing *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 532-33 (3d Cir. 1999). Moreover, it was Mr. Moore's burden to prove this. *Id.* (landlords must carry the heavy burden of demonstrating that the post-petition rent, including stub rent, provided an actual benefit to the estate and incurring the post-petition rent obligation was necessary to preserve the value of estate assets).

The Court first addresses the stub rent period of November 2019. At that time, early in her bankruptcy case, the Debtor had filed the Stay Imposition Motion, sought repossession of the Leased Property, and had agreed to resolve the motion by committing to pay rent going forward in exchange for repossession of the Leased Property. Based on the Debtor's testimony at the Hearing, the Court finds that, at that early stage of her case, the Debtor's intention and goal was to resume her daycare business's operations. As such, the Debtor's access to the Leased Property in the second half of November 2019 provided an actual and necessary benefit to the preservation of the Debtor's estate, because it allowed her the possibility of resuming her business in the facility in which it had been operating pre-petition, even if the Debtor did not actually resume such operations during that time. The Court will therefore allow an administrative expense to Mr. Moore pursuant to §503(b)(1) for the stub rent period of November 13th to 30th, 2019, in the amount of $660.00, which represents the per diem rent of approximately $36.67, multiplied by the 18 days in November 2019 during which the Debtor had access to the Leased Property.

With respect to the months of March 2020 until May 2021, however, the Court finds that Mr. Moore did not meet the "heavy burden" of demonstrating that the post-petition rent due for the Leased Property provided an actual benefit to the Debtor's estate and was necessary to

preserve the value of estate assets. Once the lease for the Leased Property was deemed rejected as a matter of law under §365(d)(4), the Debtor was no longer entitled to resume her daycare's operations there, whether she was able to get back up and running or not. The undisputed evidence, however, establishes that she never resumed operations, and at most left certain unspecified items at the Leased Property until at or about the time the lease expired by its own terms in May 2021. It goes without saying that the Leased Premises did not benefit the Debtor's business operations post-rejection where those operations never resumed, and Mr. Moore presented no evidence that the storage of the Debtor's items, whatever those may have been, provided any benefit to the preservation of the Debtor's estate. As such, the Court cannot find that, from March 2020 forward, the Leased Property provided actual benefit that preserved the Debtor's estate, where (1) the lease had been deemed rejected and the Debtor no longer had a legal right to resume operations at the Leased Property, and (2) there has been no showing that any storage of possessions at the Leased Property benefitted the estate. The Court therefore will not allow Mr. Moore's administrative expense claim for the months from March 2020 to May 2021.[20]

---

[20] At the Hearing, the Debtor's counsel relied heavily and vociferously on *In re Highway Techs., Inc.*, 2015 Bankr. LEXIS 308 (Bankr. D. Del. Jan. 30, 2015) to argue that there must be a concrete, discernible benefit from actual use of leased property in order for an administrative expense to be allowed, going so far as to interrupt the Court's questioning about whether the reason why the Debtor didn't use the Leased Property is relevant. The Court takes this opportunity to point out the obvious: *Highway Techs* is not binding on this Court, was quoting the standard used by the Second Circuit, and was doing so in the context of an administrative expense request based on the debtors' use of software, not commercial real property. More importantly, contrary to the Debtor's argument, storage of items at the Leased Property is "actual use" of the property, and could have potentially given rise to an administrative expense if Mr. Moore had been able to carry his burden of proving such storage's benefit to preservation of the Debtor's estate. *See In re Cornwall Paper Mills Co.*, 169 B.R. 844, 851 (Bankr. D.N.J. 1994) (endorsing objective lease-based approach to determining the value of debtor's storage at leased premises "so long as the debtor is occupying the leased property and using it to help preserve the estate, regardless of whether the property is being put to the same use as it was pre-petition.) (citing *In re F.A. Potts & Co., Inc.*, 137 B.R.

### IV. CONCLUSION

For the reasons discussed above, the Court will grant the Administrative Expense Claim in part, and deny it in part. Mr. Moore will be allowed an administrative expense claim pursuant to §§365(d)(4) and 503(b)(1) of the Bankruptcy Code for the post-petition rent for the Leased Property for the period from November 13, 2019 to February 29, 2020, in the amount of $3,960.00. An order consistent with this Memorandum will be issued.

Dated: April 28, 2023

MAGDELINE D. COLEMAN
CHIEF U.S. BANKRUPTCY JUDGE

Erik B. Jensen, Esquire
Jensen Bagnato, PC
1500 Walnut Street, Suite 1510
Philadelphia, PA 19102

Demetrius Parrish, Esquire
7715 Crittenden Street, #360
Philadelphia, PA 19118

Jeffrey M. Carbino, Esquire
Leech Tishman Fuscaldo & Lampl
1007 N Orange Street, Suite 420
Wilmington, DE 19801

Kenneth E. West, Esquire
Chapter 13 Standing Trustee
1234 Market Street, Suite 1813
Philadelphia, PA 19107

United States Trustee
Custom House
200 Chestnut Street, Suite 502
Philadelphia, PA 19106

---

13, 17 (E.D. Pa. 1992)).